HARGIS (War Eagle) TRANSPORT
and Arkansas Property & Casualty Guaranty Fund  *v.*
James CHESSER

CA 03-1252                                     190 S.W.3d 309

Court of Appeals of Arkansas
Division I
Opinion delivered September 8, 2004

*Frye, Boyce & Hill, P.A.,* by: *Andy L. Caldwell,* for appellant.

*Walters, Hamby & Verkamp,* by: *Michael Hamby*; and *Lawrence Fitting,* for appellee.

Sᴀᴍ Bɪʀᴅ, Judge. Hargis Transport Company appeals a decision of the Workers' Compensation Commission that awarded benefits to James Chesser, a former truck driver for the company, for an injury to his right arm. The administrative law judge

found the injury not to be compensable at an initial hearing, but a second hearing was granted for the purpose of taking additional evidence. The law judge found from the new evidence that the injury was compensable; the Commission affirmed and adopted the decision of the law judge.

Hargis raises three points on appeal, first contending that the Commission's decision that Chesser satisfied his burden of proof in regard to new evidence was an abuse of discretion, and was contrary to the facts and law. Second, Hargis contends that substantial evidence does not support the Commission's finding that Chesser acted diligently in obtaining the additional medical evidence. The third point raised is that substantial evidence does not support the Commission's finding that Chesser sustained a compensable injury to his right arm. We disagree with all of these contentions; therefore, the decision is affirmed.

It is not controverted that Chesser reported to Hargis that he injured his right elbow and arm while unloading a truck in North Carolina on October 24, 2000. Hargis sent him for medical care to a general practitioner in Van Buren, Arkansas, and eventually to Drs. James Cheyne and Nils K. Axelson at River Valley Orthopaedic Center in Fort Smith. Hargis later controverted the claim, and Chesser attempted to prove compensability by submitting records of his treating physicians at the initial hearing before the law judge on May 15, 2001. In a decision of July 25, 2001, the law judge ruled that Chesser had failed to prove a compensable injury, specifically, by failing to meet the requirement of our workers' compensation statutes that the injury be established by medical evidence supported by objective findings. Chesser timely appealed the decision to the Workers' Compensation Commission.

On January 15, 2002, before his appeal was decided by the Commission, Chesser filed a motion for remand to the law judge for consideration of new evidence under the authority of Ark. Code Ann. § 11-9-704(b)(7). The motion recapped Chesser's testimony at the initial hearing that he moved from Arkansas to Bacliff, Texas; and that on his last visit preceding the hearing, Dr. Cheyne recommended that Chesser obtain treatment closer to his residence for more aggressive, regular physical therapy than he was getting in periodic visits to Ft. Smith. The motion further stated that on December 17, 2001, Chesser saw medical personnel [in Texas] who recommended an MRI of his right arm; and that the MRI, performed on December 31, 2001, was clearly objective and warranted consideration. In a March 7, 2002, supplemental mo-

tion for remand, Chesser also requested consideration of a faxed copy of medical records, which he stated he had received on Friday afternoon, March 1, 2002, pertaining to a surgical procedure performed on his right arm on February 12, 2002.

On March 27, 2002, the Commission entered an order of remand to the law judge. At the resultant hearing, both parties were afforded the opportunity to present evidence on the issues of whether Chesser's subsequently proffered evidence would change the result reached in the opinion of July 25, 2001, and whether Chesser had exercised proper diligence in obtaining and seeking to introduce the proffered additional evidence.

The law judge noted that the previous denial of the claim was based upon Chesser's failure to meet the requirement of Ark. Code Ann. § 11-9-102(4)(D) that a compensable injury must be established by medical evidence supported by objective findings, and he noted that prior medical records had not established that expert medical opinion was based upon objective physical findings. In an opinion of September 20, 2002, the law judge found that the proffered additional medical evidence showed physical injuries or conditions based upon or supported by purely objective physical findings, and he found that Chesser had acted in a diligent manner in obtaining and seeking to introduce this additional evidence. Admitting the new evidence into the record, the law judge concluded that Chesser had sustained a compensable injury and was entitled to medical and temporary total disability benefits. In a decision of July 29, 2003, the Commission affirmed the decision of the law judge and adopted his findings of fact. The appeal before us arises from the Commission's decision.

1. *Whether the Commission's decision that Chesser satisfied his burden of proof in regard to new evidence was an abuse of discretion, and was contrary to the facts and the law*

2. *Whether substantial evidence supports the Commission's finding that Chesser acted in a diligent manner in obtaining the additional medical evidence*

These points are interrelated, and we will address them as one. Arkansas Code Annotated sections 11-9-704 and 11-9-705 (Repl. 2002) govern the introduction of evidence for controverted workers' compensation claims. Under subsection 11-9-704(b)(7), the Commission may remand any case to the administrative law

judge for the purpose of taking additional evidence. Section 11-9-705 reads in pertinent part:

(c) INTRODUCTION OF EVIDENCE . . . .

(B) Each party shall present all evidence at the initial hearing.

(C)(i) Further hearing for the purpose of introducing additional evidence will be granted only at the discretion of the hearing officer or commission.

The Commission's discretion should be exercised and the motion to present new evidence should be granted where the movant was diligent and where the new evidence is relevant, is not cumulative, and would change the result. *Mason v. Lauck*, 232 Ark. 891, 340 S.W.2d 575 (1960). The Commission's exercise of discretion in determining whether to remand for the taking of additional evidence will not be lightly disturbed on appeal. *Haygood v. Belcher*, 5 Ark. App. 127, 633 S.W.2d 391 (1982).

Hargis cites its own prerogative to controvert a claim, and it complains that for five months it "labored" under the impression that it had prevailed at the hearing and was not obligated to provide care. It complains that Chesser did not seek care until he was in the emergency room some eight months after Dr. Cheyne instructed him to transfer his care to a physician closer to his residence, that Chesser did not actively seek treatment for his arm, and that he could not produce documentation or recall the name of any physician regarding refusal of treatment. Hargis observes that Chesser was able to travel from Texas to Arkansas for doctors' visits and states that there was no "particular" evidence that Dr. Cheyne's care was gratuitous. Hargis complains that Chesser "managed to obtain additional medical care for his elbow problem that included an MRI" seven months after the first hearing and five months after his claim was denied. Hargis faults Chesser for lacking such evidence as an MRI during the original proceedings, and for "waiting" approximately one month after treatments to file his two motions for remand. Hargis states that fair-minded people could not conclude that Chesser acted with diligence in submitting new evidence.

Chesser testified at the hearing of June 25, 2002, regarding medical care he received after moving from Arkansas. He stated that he had moved from San Leon to Concan, Texas, after the date of the last hearing and had not worked then. He testified that between May and November 2001, he had no financial ability to secure medical services but had attempted to see doctors in the

Galveston and Texas City areas; that he had been unsuccessful in getting treatment at a reduced charge; and that he had been turned away in a waiting room that required him to produce cash before treatment. He agreed that Dr. Cheyne had encouraged him to transfer his case to Texas, but he testified that he was under the impression that he was at a dead end.

Chesser testified that he heard about a program for indigent care only when he went to a Texas emergency room in severe respiratory distress due to an allergic reaction. He testified that someone there noticed that he was favoring his arm; he was treated for the arm problem and was referred to Dr. Gloria Box, an orthopedic surgeon; that he saw Dr. Box and her physician's assistant, Marc Deschaine; that Dr. Box referred him to physical therapy and to Dr. Karen Johnston-Jones, an orthopedic surgical specialist in San Antonio; and that Dr. Johnston-Jones ultimately performed surgery. Chesser described his right arm following surgery as "excellent" and "so much better than it was it's just incredible."

Chesser said that none of the receptionists at the doctors' offices that he attempted to get into ever told him about the indigent-care program, and that had it not been for his hospital stay, he would not have known about the financial assistance that allowed him to see Dr. Box. Chesser stated that he had last seen Dr. Cheyne, his Ft. Smith doctor, in April of 2001; that he had not paid Dr. Cheyne or Dr. Axelson; and that he had no idea who paid them. He testified that he attempted to see a doctor in his area after Dr. Cheyne recommended that he do so, but that "they" would not treat him because it was a workers' compensation injury under litigation in another state.

Medical records generated after the initial hearing were introduced at the hearing upon remand. A clinical note by De-schaine on December 17, 2001, states that "given the mechanism of injury and the associated pop, there could be ligamentous injury about the elbow," and that "an MRI would certainly be valuable as a diagnostic tool." A December 31, 2001, report of the MRI that was performed upon this recommendation reads in part:

> History: Right elbow angular ligament tear.
>
> MRI of the Right Elbow: . . . .
>
> There is a small to moderate joint effusion. There is a nondisplaced vertical, oblique, olecranon process fracture which appears to be recent. . . .

Impression:

1. Small to moderate elbow joint effusion.

2. There is a nondisplaced, vertical, oblique, olecranon process fracture of uncertain age, however it appears to be subacute.

The operative report of Dr. Johnston-Jones, dated February 12, 2002, makes a postoperative diagnosis of right lateral epicondylitis, right radial tunnel syndrome, and partial tear lateral collateral ligament. The report states in part:

> The patient is a 55 year old right handed unemployed previous truck driver who had an on the job injury greater than a year ago. He was using his arm to unload and felt the pop and significant discomfort in his elbow and has had severe pain ever since. He has failed conservative treatment. . . . He has evidence of a significant undersurface tear of the chondral origin by MRI and clinically has not only significant pain but weakness with grip and with elbow extended and also has a lot of guarding with the lateral collateral.

The operative report notes that several steroid deposits of the lateral collateral ligaments required debridement on the undersurface of the ligament, that areas of degeneration of the capsule and common extensor were exposed and the most hemorrhagic areas of the capsule were incised and excised, that the partial tear in the lateral collateral ligament had to be excised, and that degenerative tissue from the undersurface of the common extensor origin was incised and excised.

Finding that Chesser was diligent in seeking to introduce the additional evidence, the Commission acknowledged that he did not consult with Deschaine in Texas until some eight months after Dr. Cheyne advised him to see an orthopedist in the Houston area and have regular physical therapy. The Commission found no merit in Hargis's criticism of Chesser and his attorney for obtaining the additional medical treatment in Texas nor for their timing in presenting reports of this treatment to the Commission. The Commission's opinion included the following assessments:

> First, to the extent that the respondents and the dissent[1] seem to suggest that the claimant should have presented MRI and surgery

---

[1] This was a 2-1 decision by the Commission.

results at the first hearing, the record establishes that none of the claimant's authorized treating physicians in the Fort Smith area had provided or recommended an MRI, much less accurately diagnosed the actual nature of the elbow injury and performed surgery. Therefore, the MRI and surgery records could not have been presented into evidence at the time of the first hearing.

To the extent that the dissent suggests the claimant was dilatory in seeking testing and surgery in Texas, the Administrative Law Judge, who heard the live testimony and observed the claimant's demeanor, found credible the claimant's testimony that he was unable to obtain medical services in Texas earlier because of his own lack of finances and because the respondents refused to accept their liability for the services sought.

To the extent that the dissent suggests that the claimant was dilatory in presenting the additional evidence to this Commission after undergoing the MRI and later the surgery, we note, as did the Administrative Law Judge, that the claimant had obtained and presented to the Commission a report on the MRI study only 25 days after the study was performed, and the claimant obtained and presented to the Commission a surgery report only 21 days after the surgery was performed. We point out that during these approximately three week periods, the reports had to be dictated and made available to the claimant and his attorney, the reports from Texas had to be sent to the claimant's Arkansas attorney, his Arkansas attorney had to prepare an accompanying motion to submit additional evidence, and the Arkansas attorney had to file that motion and the Texas medical reports with the Arkansas Workers' Compensation Commission. Clearly, the claimant's attorney should be complimented, not criticized, for the relatively short order in which he and his client brought the additional medical reports at issue to the attention of this Commission.

We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the decision is supported by substantial evidence. *Geo Specialty Chem., Inc. v. Clingan,* 69 Ark. App. 369, 13 S.W.3d 218 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Air Compressor Equip. v. Sword,* 69 Ark. App. 162, 11 S.W.3d 1 (2000). Questions concerning the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission. *Ellison v. Therma-Tru,* 71

Ark. App. 410, 30 S.W.2d 769 (2000). We defer to the Commission's findings on what testimony it deems to be credible, and it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.*

The decision of the Commission, affirming and adopting the opinion of the administrative law judge, explained its finding that Chesser exercised due diligence as follows:

> The claimant's failure to obtain and submit this evidence at an earlier date was not due to any lack of effort on his part. *Rather, the delay in obtaining and submitting this [is] due to matters beyond the claimant's control, including the respondents' failure or refusal to provide appropriate medical services for the claimant's compensable injury, as required by the Act.*

(Emphasis ours.)

■■ We find no abuse by the Commission in ordering the taking of additional evidence. We furthermore hold that the Commission's summary of evidence, as reproduced earlier in this opinion, constitutes substantial evidence to sustain its finding that Chesser acted with diligence in obtaining and presenting additional evidence to the Commission.

3. *Whether substantial evidence supports the Commission's finding that Chesser sustained a compensable injury to his right arm*

Hargis first argues under this point of appeal that the medical records of the initial hearing, without the new evidence introduced at the second hearing, showed only subjective complaints of pain. We need not address this argument because we have held that the Commission did not abuse its discretion in allowing the additional evidence into the record after the date of the initial hearing.

Hargis further argues that even with the additional evidence, Chesser did not satisfy his burden of proof. It complains that a physical exam by Deschaine on December 17, 2001, was essentially normal in all respects; that the MRI of December 20, 2001, was procured fourteen months after the date of injury, with findings of "uncertain age" and appearing "to be recent"; that Chesser did not describe a "pop" in his elbow until visiting Deschaine in December 2001; and that Chesser gave different versions of the occurrence of his injury.

Chesser responds that the additional records show the actual existence of medically established physical injury. He points out that the Commission found his testimony to be credible and that the onset of symptoms he suffered coincided with the histories provided to various physicians.

Arkansas Code Annotated section 11-9-102(4)(D) (Repl. 2002) requires that a compensable injury be established by objective findings. As the Commission noted, in order to prove a compensable injury, Chesser was required not only to prove the requirement of Ark. Code Ann. § 11-9-102(4)(D), but also to meet the requirements of section 11-9-102(4)(A)(a):

> (1) That the injury arose out of and occurred in the course of the employment;
>
> (2) That the injury was caused by a specific incident;
>
> (3) That the injury is identifiable by time and place of occurrence;
>
> (4) That the injury caused internal or external physical harm to the claimant's body;
>
> (5) That the injury required medical services or resulted in disability.

Adopting the decision of the law judge, the Commission concluded that Chesser had met all statutory requirements regarding compensability:

> The claimant has established by medical evidence, supported by objective findings, that actual existence of a physical injury to his right elbow/arm. He has further proven by the greater weight of the credible evidence that this physical injury arose out of and occurred in the course of his employment with this respondent, was caused by a specific incident, is identifiable by time of place and occurrence [sic], caused internal physical harm to his body, and required medical services and resulted in disability.

The determination of whether there is a causal connection between an injury and a disability is a question of fact for the Commission to determine. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998). The Commission has the duty of weighing medical evidence, and the resolution of conflict-

ing evidence is a question of fact for the Commission. *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002). We defer to the Commission's findings on what testimony it deems to be credible, and it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Ellison v. Therma-Tru, supra.*

■ We hold that the MRI report of December 2001 and the February 2002 operative report of Dr. Johnston-Jones, both introduced at the second hearing, constitute sufficient evidence to uphold this finding. In affirming this remaining point on appeal, we note that the interpretation of the medical evidence and the assessment of testimony is in the realm of the Commission. Therefore, we conclude that substantial evidence supports the Commission's decision that Chesser suffered a compensable workers' compensation injury.

Affirmed.

GLADWIN and GRIFFEN, JJ., agree.