Woodrow SWAIM *v.* WAL-MART ASSOCIATES, INC., Claims Management, Inc., and Second Injury Fund

CA 04-1116                                      208 S.W.3d 837

Court of Appeals of Arkansas
Opinion delivered May 25, 2005

*Tom Thompson,* for appellant.

*Roberts Law Firm, P.A.,* by: *Michael L. Roberts* and *Caroline L. Curry,* for appellees.

J OHN B. ROBBINS, Judge. This is an appeal from a decision of the Workers' Compensation Commission, which affirmed and adopted the opinion of the Administrative Law Judge (ALJ). The Commission denied benefits on a claim submitted by appellant Woodrow Swaim[1] to his employer, appellee Wal-Mart Stores, Inc. Swaim argues on appeal that the Commission's decision, finding that his right-foot fracture was idiopathic and non-compensable, is not supported by substantial evidence. We reverse and remand for further proceedings.

When reviewing a decision from the Workers' Compensation Commission, the appellate court views the evidence and

---

[1] The named appellant is technically Betty Swaim, acting in her capacity as administratrix of the estate of Woodrow Swaim, who died after the ALJ entered his decision but prior to the submission of this appeal to our court. We will refer to Mr. Swaim as the appellant for the sake of clarity.

all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirms that decision if it is supported by substantial evidence. *Death & Permanent Total Disability Trust Fund v. Brewer*, 76 Ark. App. 348, 65 S.W.3d 463 (2002). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *See id*. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id*. Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Davis v. Old Dominion Freight Line, Inc.*, 341 Ark. 751, 20 S.W.3d 326 (2000); *Johnson v. American Pulpwood Co.*, 38 Ark. App. 6, 826 S.W.2d 827 (1992).

In the case at bar, the Commission issued a brief opinion, which affirmed and adopted the ALJ's opinion as the decision of the Commission, which is permitted under Arkansas law. *See Odom v. Tosco Corp.*, 12 Ark. App. 196, 672 S.W.2d 915 (1984). In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *See ITT/Higbie Mfg. v. Gilliam*, 34 Ark. App. 154, 807 S.W.2d 44 (1991). Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order. *See Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark. App. 338, 107 S.W.3d 876 (2003).

In this case, there were multiple issues to be litigated, but the primary and controlling issue was whether the fracture to Swaim's right foot was idiopathic in nature and non-compensable.[2] The facts giving rise to the claim were not in dispute. Swaim, a diabetic man in his fifties, worked for Wal-Mart since 1992 as a stocker. He worked first in the automotive department, but he was ultimately moved to the produce section. By April of 2000, he had routinely

---

[2] If the foot fracture was determined to be compensable, the remaining issues included (1) whether the condition resulting in amputation of Swaim's right toes was causally related to his employment, (2) whether Swaim was rendered permanently and totally disabled, and (3) whether the Second Injury Fund bore any liability regarding this claim. Those issues were rendered moot by finding that the fracture was not compensable.

stocked the produce section on Sundays for a couple of years, often using a pallet pulled by a jack to move the produce from the refrigerated section of the store out into the shopping area.

On Sunday morning, April 9, 2000, he was walking backward while pulling a heavily-loaded pallet by the jack attached to it when he felt a "pop" in his right foot. Swaim said he did not do anything differently while pulling the pallet that day, nor did he step off of or onto anything or twist his foot; he was in the normal course of walking backward. The pallet carried "a lot of produce" that day, although there were times when it had more and times when it had less. Swaim stated that pulling the heavy pallet put a lot of strain on his calves and feet, but he did not know why it popped that particular day as opposed to any other day.

Swaim took his shoe off to look, seeing "a little 'A' sticking up" on top of his foot, and a dime-sized blue circle on bottom. Though it hurt, Swaim continued to work. When a supervisor arrived at the store later that morning, Swaim reported the incident. On April 19, 2000, Swaim presented to Dr. Greg Neaville, his internal medicine doctor at the White River Medical Center, where he complained that his foot was hurting. X-rays revealed that he had a fracture in his right foot at the fifth metatarsal (the small toe). When he and his employer were informed that the toe was broken, Swaim was taken off the floor and placed on light duty.

Swaim testified that he was diagnosed with diabetes in 1990 and that he knew the dangers associated with diabetes. He confirmed that he and his wife checked his feet twice daily since 1993 or 1994. Swaim was hospitalized twice in the 1990's to treat diabetic foot ulcers, and he had undergone a single-toe amputation on his left foot because of poor healing.

With regard to the right-foot fracture, the medical records indicated that Swaim was referred to his regular treating orthopedic surgeon in Batesville, Dr. Jeff Angel, who recommended surgery to set the bone. Swaim was reluctant to have surgery, but he denied that he refused surgery. Another orthopedic surgeon, Dr. Lowery Barnes, provided a second opinion, and Dr. Barnes agreed that given Swaim's substantial improvement and lack of pain by June 2000, surgery was not mandated. Swaim returned to see Dr. Barnes for follow-up in July and September 2000; appellant denied having any foot pain. During this time, Swaim was regularly wearing a special shoe designed for diabetic feet. He continued to work light duty, missing no work.

On February 8, 2001, Swaim presented to the emergency room with a new ulceration on a toe of his right foot. Although the infected area was drained and cleaned, it resulted in amputation of the fifth toe on February 10, 2001. Appellant was not discharged from the hospital until February 21, 2001. More problems with drainage persisted, and on June 2, 2001, the fourth toe was amputated.

An independent medical evaluation was conducted by Dr. Ruth L. Thomas in January 2003. Dr. Thomas opined that the two-toe amputations on his right foot were related to his diabetic neuropathy and poor circulation, not his April 2000 fracture at work. Drs. Angel and Neaville wrote supportive letters on behalf of appellant, describing his medical history and relating the foot ulceration in February 2001 and the complications that followed to the fracture that never properly healed.

The ALJ denied workers' compensation benefits for this claim, concluding that the right-foot fracture was an idiopathic injury that did not arise out of his employment. The rest of the issues presented for litigation were never reached because of this finding. Swaim appealed to the Commission, which affirmed and adopted the ALJ decision. This appeal followed.

Appellant had the burden of proving a compensable injury by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i) (Repl. 2002). Arkansas Code Annotated section 11-9-102(4)(A) (Repl. 2002) provides that "compensable injury" means "an accidental injury causing internal or external physical harm . . . arising out of and in the course of employment. . . . An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]" "Arising out of the employment" refers to the origin or cause of the accident, while the phrase "in the course of the employment" refers to the time, place and circumstances under which the injury occurred. *See Little Rock Convention & Visitors Bur. v. Pack*, 60 Ark. App. 82, 959 S.W.2d 415 (1997); *Moore v. Darling Store Fixtures*, 22 Ark. App. 21, 732 S.W.2d 496 (1987).

An idiopathic injury is one whose cause is personal in nature, or peculiar to the individual. *See Kuhn v. Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996); *Little Rock Convention & Visitors Bur. v. Pack, supra; Moore v. Darling Store Fixtures, supra.* Injuries sustained due to an unexplained cause are different from injuries

where the cause is idiopathic. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998). Where a claimant suffers an unexplained injury at work, it is generally compensable. *Little Rock Convention & Visitors Bur., supra.* Because an idiopathic injury is not related to employment, it is generally not compensable unless conditions related to the employment contribute to the risk of injury or aggravate the injury. *Id. See also Crawford v. Single Source Transp.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004).

Appellant contends on appeal that although he suffers from diabetes, the foot fracture was neither idiopathic nor unexplained but was a compensable specific-incident workplace injury. We must agree.

Appellant relies on *Crawford v. Single Source Transp. Fidelity & Cas. Ins. Co.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004), to support his argument. In that case, Mr. Crawford, a man in his late fifties, was exiting the cement truck he drove for his employer. He stepped down two steep steps while holding onto the steering wheel, and as his left foot reached the ground, Crawford's knee gave way or buckled. As a result, appellant fell to the ground and began to feel pain in his knee, and it swelled and hurt after the fall. Resulting surgery evidenced that Crawford had a both a tear of the medial meniscus and osteoarthritis in his left knee. The Commission denied benefits, but on appeal we agreed with appellant's argument that his injury was neither idiopathic nor unexplained but rather that he sustained a specific-incident injury. In reversing and remanding for benefits, we held that the injury was not simply personal in nature where it was caused while he attempted to exit his employer's vehicle from an elevated position, which employment conditions contributed to his accident. *See id.* We also held that Crawford's injury was not unexplainable because his testimony fully explained the circumstances surrounding his fall. *See id.*

As applied to the present appeal, Swaim's fracture was not unexplained because his testimony fully explained the circumstances surrounding the morning when he felt his foot "pop." The question is narrowed to whether the fracture was idiopathic, and if so, whether the employment contributed to the risk or increased the effect of the injury. *Little Rock Convention & Visitors Bur., supra.* We hold that there is no substantial evidence to support the finding that this fracture was idiopathic or that the work conditions did not contribute to the risk that a fracture would occur.

Appellee relies on the case of *Whitten v. Edward Trucking/Corporate Solutions*, 87 Ark. App. 112, 189 S.W.3d 82 (2004), to support its contention that there is a substantial basis for the denial of benefits. Therein, Mr. Whitten fell while at work, delivering fuel tickets to his employer at the trucking company's office. Specifically, Whitten walked up the stairs to enter the office, reached for the door, felt pain in his back, and fell to the ground. Whitten did not trip or stumble and he was not carrying anything heavy at the time. Whitten had three known medical conditions or events predating his injury on that day: a stroke or cerebrovascular accident; a herniation at L3-4; and a compressive lesion on his thoracic spine. One doctor opined that the lesion may have caused his fall. The ALJ denied benefits, finding that the fall was idiopathic, caused by one or more of the medical conditions particular to Whitten, not precipitated or aggravated by his job. The Commission affirmed and adopted the ALJ decision. On appeal to us, we examined the relevant law, determined that there was substantial evidence to support the conclusion that this was an idiopathic and not unexplained fall, and we affirmed the denial of benefits. We noted the case of *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998), which held that though a fall from scaffolding was idiopathic, in that it was caused by the effects of a condition related to alcohol-withdrawal, but held that it was compensable because the risk associated with working high atop scaffolding increased the dangerous effect of the fall.

Using these precedents, we hold that there is no substantial evidence to support that this was an idiopathic injury, particular to Swaim. In fact, we see no evidence, medical or otherwise, to support a conclusion that Swaim's diabetic condition predisposed him to bone fractures. In addition, the ALJ failed to make any factual findings beyond the idiopathic injury itself, whereas the law does not preclude compensability if the risk of such an injury is increased by working conditions, or if working conditions aggravate the effect of the idiopathic injury. Even were we to hold that substantial evidence supported the idiopathic-injury finding, we would not affirm a finding that the work conditions did not contribute to the risk of such an injury. Swaim's job duties required that he walk and pull a produce-laden pallet that put stress on the feet, and thus the work increased the risk of fracture.

In summary, this was a specific-incident injury arising out of and in the course of the employment. The finding that this was a non-compensable idiopathic injury is not supported by substantial evidence.

We reverse and remand for proceedings consistent with this opinion.

GLOVER and NEAL, JJ., agree.