FAYETTEVILLE SCHOOL DISTRICT
and Risk Management Resources *v.*
James KUNZELMAN

CA 05-479                                                                217 S.W.3d 149

Court of Appeals of Arkansas
Opinion delivered November 16, 2005

*Friday, Eldredge & Clark,* by: *Betty J. Demory,* for appellants.

*The Niblock Law Firm,* by: *Raymond L. Niblock,* for appellee.

D AVID M. GLOVER, Judge. This is a workers' compensation case. The Commission affirmed and adopted the ALJ's decision, which found that appellee, James Kunzelman, sustained a compensable right-eye injury on January 7, 2003, and that he was entitled to additional medical treatment for his right eye, reimbursement for sunglasses, and $3000 for permanent facial disfigurement. For their sole point of appeal, appellants, Fayetteville School District and Risk Management Resources, contend that the Commission's opinion is not supported by substantial evidence. We affirm the Commission.

## Standard of Review

When reviewing a decision from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Swaim v. Wal-Mart Assocs., Inc.,* 91 Ark. App. 120, 208 S.W.3d 837 (2005). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might

have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* When the Commission affirms and adopts the ALJ's opinion as the decision of the Commission, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, in reviewing the case, we consider both the ALJ's decision and the Commission's majority opinion. *See id.*

### Award of Additional Benefits

The parties stipulated below that appellee sustained a compensable injury to his eye on January 7, 2003, and that medical expenses had been paid to December 15, 2003. The issues that the parties agreed to litigate were 1) additional medical after December 5, 2003, and 2) permanent disfigurement pursuant to Arkansas Code Annotated section 11-9-524 (Repl. 2002).

For their sole point of appeal, appellants contend that the Commission's award of additional benefits to appellee is not supported by substantial evidence, and that "[i]nstead, the evidence in this case reveals that the appellants provided the appellee with extensive medical treatment for a condition which is not the result of a work-related accident." In support of this assertion, appellants contend that "the medical testimony of the regional specialist on iritis, Dr. Christopher Walton, shows that the treatment the appellee received, as well as the dilated condition of the appellee's eye, is due to herpes." The bulk of appellants' argument then consists of recounting the evidence that they contend supports their position and undermines appellee's. We do not find the argument convincing.

Appellee testified that on January 7, 2003, as he was stirring a ceramic glaze for his art class, "either some glaze splashed into my eye, or it splashed onto my face, and I wiped my face with my hand." He stated that he kept working for another twenty to thirty minutes until his students got to class and that when the students entered they immediately asked him what was wrong with his eye. He said that he looked in the mirror and then ran to the nurse's office. He said that his right eye was very bloodshot; that the nurse told him to flush it out; and that he did so for five to six minutes. He explained that by 3:30 that afternoon, his eye had become so light sensitive that he could not go outside without completely closing his eye.

He stated that after school he went by the office of his friend, Don Marr, and then to the office of Dr. Brian Buell, an optometrist. He stated that he had some pain and discomfort in his eye and that he knew "there was something going on." He explained that Dr. Buell checked his eye pressure when he arrived, found it to be high, and that he stayed there until about 9:30 p.m., while Dr. Buell put various eye drops in his eye to get the pressure back into a safe range. That effort continued for the next two days, with appellee staying at Dr. Buell's office from 8:00 a.m. until 5:00 p.m. and Dr. Buell putting eye drops in appellee's eye every hour. He stated that on the third day following the accident, he went back to work. He explained that his eye was very light sensitive and that he had problems with blurry vision and seeing details. He testified that those problems lasted several weeks and that he saw Dr. Buell daily during that period. He said that Dr. Buell referred him to Dr. Paul Henry, an ophthalmologist, after about three weeks, but that he continues to see Dr. Buell several times a week.

Appellee testified that his eye stayed "totally bloodshot" for six or seven weeks; that the left side of his eye stayed red for almost a year; and that there is still some redness and some scarring. He said that he only missed two days of work and that he wore sunglasses in the classroom for approximately two to three weeks because the lights were too bright. He said that his doctor told him that the light entering his eyes would cause cataracts.

Appellee testified that he saw Dr. Walton in Memphis one time for fifteen minutes; that Dr. Walton did not prescribe any treatment for him; and that he considered Dr. Henry to be his treating doctor. He explained that his main problem now is the permanently dilated pupil; that as an artist, his inability to focus causes difficulty in helping his students; and that he cannot perceive color like he used to be able to do.

Appellee testified that before the incident on January 7, 2003, he never had any eye problems and never wore prescription glasses or contacts; that he had never been told by a doctor that he had herpes; that he now uses a topical steroid routinely for his eye; that he never used a topical steroid for his eye before January 7, 2003; that he will need surgery in the near future, when he is weaned off of the steroids, to correct his cataract; and that before January 7, he did not believe nor have any information that he had a cataract.

Donald Marr testified that he has known appellee for fifteen to sixteen years; that they have lived together for fourteen to

fifteen years; that during that time, he had never heard appellee complain about eye problems until January 7, 2003; and that prior to that date, appellee did not wear glasses or contacts and did not use prescription eye drops or medications. He explained that when appellee came to his office on the afternoon of January 7, his eye was still bothering him; that appellee either had his hand over his eye or he would have to squint and look out of his left eye to see; that his eye was also very bloodshot and red; and that he had a headache. He stated that since January 7, appellee's eye has continued to be light sensitive; that he still wears a visor or sunglasses; and that the lights in their house are always dimmed.

Anita Lawson, the principal at appellee's school, testified that she has known appellee for four and a half years; that he has a strong work ethic, is very professional, an excellent employee, and very honest; that on January 7, 2003, he came to talk to her about something and she noticed that his eye was very red; and that she called it to his attention and encouraged him to go to the doctor. She stated that his eyes had always been clear blue and that now one eye looks different because it is constantly dilated. She said that appellee told her he had been mixing a glaze when it splashed in his eye and that he has had consistent problems with his eye after that date.

The remaining testimony at the hearing came from the deposition testimony of three doctors: Brian Buell, the optometrist who first saw appellee; Paul Henry, the ophthalmologist to whom appellee was referred; and Robert Christopher Walton, the Memphis ophthalmologist who was consulted in the case and who evaluated appellee on April 17, 2003. Appellants rely primarily upon Dr. Walton's testimony, opining that the eye injury was not caused by ceramic glaze, in contending that the Commission's decision is not supported by substantial evidence.

Workers' compensation law provides that an employer shall provide the medical services that are reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Repl. 2002); *Stone v. Dollar Gen. Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Stone v. Dollar Gen. Stores, supra.* It is the province of the Commission to weigh conflicting medical evidence; however, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Id.* The resolution of conflicting evidence is a question of

fact for the Commission. *Id.* We defer to the Commission's findings on what testimony it deems to be credible, and it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Hargis (War Eagle) Transport v. Chesser*, 87 Ark. App. 301, 190 S.W.3d 309 (2004).

Here, the ALJ recounted the medical testimony and exhibits in detail. Summarizing that evidence, the ALJ noted that "Dr. Walton stated that overall, his impression was that uveitis and all the other findings that were noted concerning the claimant were not related to a chemical exposure that occurred in January 2003 and that he would state that opinion within a reasonable degree of medical certainty." With respect to Dr. Buell's medical assessment, the ALJ noted that "Dr. Buell responded that based on a reasonable degree of medical certainty, he believes the claimant's eye was injured as a result of the glaze that entered his eye on January 7, 2003, that the claimant's treatment since January 7, 2003, has been reasonable and necessary, and that he believes that the major cause of the claimant's need for treatment is a direct result of the glaze which entered his eye on January 7, 2003." Concerning Dr. Henry's assessment, the ALJ noted that Dr. Henry responded to written questions the same as Dr. Buell and that Dr. Henry stated that "he felt that based on the claimant's history, the claimant's right eye was injured as a result of the chemical glaze." The ALJ then concluded:

> After a complete review of all the documentary evidence as well as the testimony, I find that the claimant has proven by a preponderance of the evidence that he is entitled to additional medical treatment after December 5, 2003. Dr. Henry and Dr. Buell have continually treated this claimant since his initial injury on January 7, 2003, when he splashed a ceramic glaze into his right eye. Although none of the claimant's treating physicians are 100 percent certain that his ongoing need for medical treatment is a direct result of this January 7, 2003, event, it is certain that he has no record of treatment of his right eye prior to this date and subsequent to that date it has been continual. Dr. Henry, in his deposition, very clearly sets forth that the event of getting chemical in the claimant's eye started the need for a treatment process, some of the treatment itself has triggered other problems which must be addressed such as his cataracts.

While it is true that Dr. Walton's opinion differed from that of Dr. Henry and Dr. Buell, his testimony was not arbitrarily disregarded. It is the Commission's duty to weigh the medical

evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Stone v. Dollar Gen. Stores, supra.* Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, we hold that the Commission's decision is supported by substantial evidence.

### The Facial Disfigurement

The ALJ also found that appellee was entitled to $3000 for his facial disfigurement. The ALJ stated: "Although the claimant's right eye injury, which has resulted in his eye being watery looking, red and with a permanently dilated pupil, is not grotesque, it is quite noticeable and does detract from the claimant's appearance. Stating it quite bluntly, it looks weird." Appellants contend that this award was in error because "[t]here is no evidence whatever that the appellee's eye had caused him to be refused any employment." We find no error.

Arkansas Code Annotated section 11-9-524 (Repl. 2002) provides:

> Compensation for disability — Disfigurement.
>
> (a) The Workers' Compensation Commission shall award compensation for serious and permanent facial or head disfigurement in a sum not to exceed three thousand five hundred dollars ($3,500).
>
> (b) No award for disfigurement shall be entered until twelve (12) months after the injury.

The wording of the statute alone supports the Commission's award. Appellants, however, rely upon *Jolly v. J.M. Hampton & Sons Lbr. Co.*, 234 Ark. 574, 353 S.W.2d 338 (1962), to support their argument. The *Jolly* case did hold that in order to recover compensation for disfigurement *under the statute at issue in that case* the claimant had to show that the disfigurement would affect his/her future earning capacity. However, the language of the statute has changed since *Jolly* was decided.

In the *Jolly* case, our supreme court quoted the statute at issue, which at that time was Ark. Stat. Ann. section 81-1313(g). According to the opinion, the statute provided:

> "The Commission shall award compensation for serious and permanent facial or head disfigurement in a sum not to exceed two

thousand ($2,000.00) dollars, *based solely upon the effect such disfigurement shall have on the future earning capacity of the injured employee in similar employment.* No award for disfigurement shall be entered until twelve (12) months after the injury."

234 Ark. at 576, 353 S.W.2d at 340 (emphasis in original). The language italicized by the supreme court in *Jolly* no longer exists in the current statute. Consequently, appellants' reliance upon *Jolly* is misplaced, and the award for facial disfigurement is supported by the current language of Arkansas Code Annotated section 11-9-524 (Repl. 2002).

Affirmed.

NEAL and VAUGHT, JJ., agree.