Cite as 2022 Ark. App. 262

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-480

|  |  |
|---|---|
| | **Opinion Delivered** May 25, 2022 |
| WHITE COUNTY MEDICAL CENTER, LLC; AND ACTION CLAIMS ADMINISTRATORS<br><br>APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. H004017] |
| V. | |
| MEGHAN JOHNSON<br><br>APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

White County Medical Center, LLC ("WCMC"), and its workers'-compensation carrier, Action Claims Administrators (collectively "appellants"), appeal the opinion of the Arkansas Workers' Compensation Commission ("Commission") finding that Meghan Johnson met her burden of proving that she sustained a compensable injury to her right ankle; she is entitled to reasonably necessary medical treatment for that injury; and she is entitled to temporary total-disability ("TTD") benefits from May 20, 2020, to December 1, 2020. On appeal, appellants contend that substantial evidence fails to support the Commission's opinion. We affirm.

At the hearing before the administrative law judge ("ALJ"), Johnson testified that she was hired in January 2020 as a mental-health technician for Compass, the psychiatric unit of WCMC. Her job required her to provide care to patients receiving treatment for mental illness

and substance abuse. On April 15, Johnson was walking around the unit checking on her patients. She stated that as she turned the corner into a patient's room, she heard and felt a pop in her right ankle. She said that she reported the incident to the charge nurse, "Brooke," and to her supervisor, Danna Meriweather, who advised Johnson to report the incident to Denise Courtney, the associate health nurse who manages workers'-compensation claims for WCMC. Johnson stated that on April 17, she reported the incident to Courtney.

Johnson further testified that she continued to work following the incident, although her ankle was swollen and bruised. On April 17, she sought medical treatment from her family doctor, Dr. Daniel Pace, whose report states that Johnson reported pain in her right ankle when she felt a pop while she was walking about one week ago. He diagnosed her with a sprain. Johnson returned to Dr. Pace on May 15 with continued complaints of pain in her ankle. He took Johnson off work until she could be seen by orthopedic surgeon, Dr. Kyle Blickenstaff. Dr. Blickenstaff's May 20 report states that Johnson had fallen a couple of weeks before, felt a pop in her ankle, and has had persistent pain, swelling, and bruising. Dr. Blickenstaff diagnosed Johnson with a sprain, recommended physical therapy, and took Johnson off work for three weeks.

On June 10, after several weeks of physical therapy, Johnson returned to Dr. Blickenstaff with only slight improvement. He referred Johnson for three more weeks of physical therapy and kept her off work. On June 15, Johnson was seen by Dr. Pace, and she requested a second opinion by another orthopedic surgeon.

On June 18, Johnson was seen by orthopedic surgeon Dr. Michael Weber. Dr. Weber's report states that Johnson was walking and turning into a patient's room when she felt a pop

2

and severe pain on the lateral side of her right ankle and that she noticed swelling and bruising thereafter. Dr. Weber suspected a tear in her peroneal brevis tendon. He recommended an MRI that later confirmed his suspicion, and he recommended surgery, which Johnson had on July 13. Dr. Weber released Johnson to return to work at full duty on December 1.

Johnson's mother (a nurse) testified that she and Johnson live together and that prior to April 15, Johnson did not suffer from any ankle problems. Johnson's mother also stated that after April 15, Johnson's ankle was bruised and swollen.

Courtney testified that on April 17, Johnson reported an injury. According to Courtney, Johnson reported that she was walking down a hallway at work when she heard a pop in her leg and that she had been diagnosed with a strain by her family doctor. Meriweather, Johnson's supervisor, testified that Johnson did not describe a particular event, incident, or an accident that happened at work; rather, Johnson reported that she had pain in her foot while she was walking.

The ALJ issued an opinion on January 26, 2021, finding that Johnson had failed to prove a compensable ankle injury. Johnson appealed to the Commission. The Commission reversed the decision of the ALJ, finding that Johnson had met her burden of proving an unexplained compensable right-ankle injury on April 15, 2020, and that the injury was not idiopathic. The Commission further found that Johnson's medical treatment for her injury, including the surgery performed by Dr. Weber, was reasonable and necessary and that she is entitled to TTD benefits from May 20, 2020, until December 1, 2020. Appellants appeal from

3

the Commission's decision contending that substantial evidence does not support the decision that she suffered a compensable injury to her right ankle.[1]

When reviewing a decision from the Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirms that decision if it is supported by substantial evidence. *Swaim v. Wal-Mart Assocs., Inc.*, 91 Ark. App. 120, 122–23, 208 S.W.3d 837, 839 (2005). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* at 123, 208 S.W.3d at 839. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.*, 208 S.W.3d at 839. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Crawford v. Single Source Transp.*, 87 Ark. App. 216, 218, 189 S.W.3d 507, 509 (2004). We readily acknowledge that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Id.* at 218, 189 S.W.3d at 509.

Arkansas Code Annotated section 11-9-102(4)(A)(i) (Supp. 2021) provides that a compensable injury means "[a]n accidental injury causing internal or external physical harm . . . arising out of and in the course of employment . . . . An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence." "Arising out

---

[1]The appellants do not challenge the Commission's findings that Johnson is entitled to medical and TTD benefits.

of the employment" refers to the origin or cause of the accident, while the phrase "in the course of the employment" refers to the time, place, and circumstances under which the injury occurred. *Swaim*, 91 Ark. App. at 125, 208 S.W.3d at 841.

Section 11-9-102(4)(D) (Supp. 2021) further provides that a compensable injury must be established by medical evidence supported by objective findings. Objective findings are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). In order to prove a compensable injury, the claimant must prove, among other things, a causal relationship between his or her employment and the injury. *Crawford*, 87 Ark. App. at 220, 189 S.W.3d at 510.

An idiopathic injury is one whose cause is personal in nature or peculiar to the individual. *Id.*, 189 S.W.3d 507. Injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. *Id.* at 220–21, 189 S.W.3d at 510. When a claimant suffers an unexplained injury at work, it is generally compensable. *Id.* at 221, 189 S.W.3d at 510. Because an idiopathic injury is not related to employment, it is generally not compensable unless conditions related to the employment contribute to the risk. *Id.*, 189 S.W.3d at 510. Employment conditions can contribute to the risk or aggravate the injury by, for example, placing the employee in a position that increases the dangerous effect of a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. *Id.*, 189 S.W.3d at 510.

Appellants argue that there is no evidence that Johnson's ankle injury was an accidental injury caused by a specific, identifiable incident. They contend that she was merely walking and turning into a patient's room when she felt pain in her foot and ankle. They assert that Johnson cannot point to any accident, incident, or event that caused her pain and that walking

5

is not an accidental injury as defined by section 11-9-102(4)(A). They further argue that there is no evidence that Johnson's injury arose out of her employment. They point out that she was simply walking and turning into a patient's room—she did not slip or fall, she was not carrying anything heavy, and she was not hit by anyone or anything. WCMC also contends that Johnson did not report an accident to Meriweather; just that her foot was hurting.

We reject appellants' arguments because substantial evidence supports Commission's finding that Johnson sustained a compensable specific-incident right-ankle injury. First, as described by Johnson, the incident was accidental because it was caused by a specific incident that was identifiable by time and place of occurrence. Johnson, who the Commission found to be a credible witness, testified that on April 15, she was walking at work when she turned into a patient's room and felt and heard a pop in her ankle. She stated that she reported the incident to two coworkers that day and to a third coworker on April 17. Meriweather confirmed that Johnson reported having ankle pain while walking on April 15, and Courtney confirm that Johnson reported on April 17 that she heard a pop in her ankle while walking at work. Second, the evidence demonstrates that Johnson's injury was supported by objective findings. Johnson and her mother, a nurse, testified that Johnson's ankle was bruised and swollen after the incident. Johnson sought medical treatment for her ankle on April 17, and Dr. Pace's report of that date notes the objective finding of edema along her right lateral ankle. Dr. Blickenstaff's May 20 report states that Johnson had the objective findings of swelling and ecchymosis (bruising) in her right ankle. Swelling is also noted in several of the physical-therapy notes. There are objective findings of a right-ankle injury on the July MRI report.

Appellants cite *Hapney v. Rheem Manufacturing Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000), for support of their position that Johnson did not sustain a specific-incident injury. In *Hapney*, our supreme court rejected a claimant's contention that her neck injury was compensable as a specific-incident injury under section 11-9-102(4)(A)(i). In rejecting her claim, the supreme court noted that the claimant, in her deposition, did not know how she was injured and could not recall anything specific happening that caused the injury. *Hapney*, 342 Ark. at 16, 26 S.W.3d at 780. Additionally, the claimant never reported to her physician that her pain was associated with any particular, specific incident. *Id.*, 26 S.W.3d at 780.

The facts in the case at bar are distinguishable. Johnson knows precisely when and how her ankle injury occurred, and she reported it to two supervisors the day it happened and to the workers'-compensation manager two days later.

Appellants also cite *Whitten v. Edward Trucking/Corporate Solutions*, 87 Ark. App. 112, 189 S.W.3d 82 (2004), for support of their argument that there is no evidence that Johnson's ankle injury arose out of her employment with WCMC. In *Whitten*, the claimant, a dump-truck driver, was walking up stairs to enter his employer's office. He reached for the door of the office, felt pain in his back, and fell to the ground. He did not trip or stumble, and he was not carrying anything heavy at the time of his fall. *Id.* at 115, 189 S.W.3d at 84. He offered no explanation or evidence as to the cause of the fall, except that it occurred after he reached for the office doorknob while climbing the stairs. *Id.* at 116, 189 S.W.3d at 84. The Commission found that the claimant's fall was idiopathic, that he had been diagnosed as suffering from three separate conditions (a stroke, a herniated disc, and a compressive legion on this thoracic spinal cord) that could have caused his fall but were not caused or aggravated by his

7

employment. *Id.* at 115, 189 S.W.3d at 84. On this evidence, this court held that the claimant failed to prove that his injury arose out his employment and affirmed the Commission's finding that he suffered a noncompensable idiopathic fall. *Id.* at 118, 189 S.W.3d at 86.

While there are some similarities in the facts of *Whitten* and the case at bar, there is one significant distinguishable fact. Unlike the claimant in *Whitten*—who suffered from three preexisting conditions that could have caused the claimant's fall—there is no evidence in the record that Johnson suffered from any preexisting conditions that could have caused her ankle injury.

The instant case is more similar to *Crawford*. In *Crawford*, the claimant testified that he walked down two steep steps on his cement truck, his foot hit the ground, his knee buckled, and he fell, injuring his knee. The Commission found that the claimant sustained a noncompensable idiopathic injury and denied the claim. *Crawford*, 87 Ark. App. at 220, 189 S.W.3d at 510. On appeal, this court held that substantial evidence did not support the Commission's finding and that the claimant sustained neither an idiopathic nor an unexplained injury but rather a specific-incident injury. *Id.*, 189 S.W.3d at 510.

> We cannot say that the injury [the claimant] suffered was simply personal in nature as it was caused while he attempted to exit his employer's vehicle from an elevated position. As a result, [the claimant's] employment conditions contributed to his accident. Furthermore, we cannot say that [the claimant's] injury was unexplainable as his testimony fully informs us as to the circumstances surrounding his fall.

*Id.* at 221, 189 S.W.3d at 511; *see also Cedar Chem. Co. v. Knight*, 372 Ark. 233, 239, 273 S.W.3d 473, 477 (2008) (affirming the Commission's finding that the claimant—who credibly testified that the onset of his pain started on July 1, 2001, after he climbed several flights of stairs at work—suffered a compensable specific-incident workplace injury); *Swaim*, 91 Ark. App. at

8

126, 208 S.W.3d at 842 (reversing and remanding the Commission's decision that the claimant sustained a noncompensable idiopathic foot injury; the foot fracture was explained because the claimant testified that he felt his foot pop while pulling a pallet, and there was no substantial evidence to support the finding that the fracture was idiopathic or that the work conditions did not contribute to the risk that a fracture would occur).

We acknowledge that this case is unusual because Johnson was merely walking and turning into a room when she heard and felt a pop in her ankle. She was not walking up or down stairs or pulling or pushing anything. She did not fall, trip, stumble, slip, or run into anyone or anything. But Johnson testified, credibly according to the Commission, that she knew precisely when her ankle popped and became painful, that she was at work and treating patients at the time of the injury, and that she reported it to two supervisors the day of the incident and to a third person two days later. She sought medical treatment two days after the incident, and the medical reports reflect that she had swelling, bruising, and a tear in a tendon in her right ankle. Her testimony fully informs us as to the circumstances surrounding her injury—this is not an unexplained-injury case. Accordingly, we hold that substantial evidence supports the Commission's finding that Johnson suffered a compensable injury that is identifiable by time and place of occurrence and that arose out of her employment with WCMC, and we affirm.

Affirmed.

HARRISON, C.J., and VIRDEN, J., agree.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Phillip M. Brick, Jr.*, for appellants.

*Stephen McNeely*, for appellee.