Sharon Ann STONE  *v.*
DOLLAR GENERAL STORES

CA 04-1194                                                      209 S.W.3d 445

Court of Appeals of Arkansas
Opinion delivered June 8, 2005

*Reid, Burge, Prevalet & Coleman*, by: *Richard A. Reid*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Betty J. Demory* and *Kristopher B. Knox*, for appellee.

WENDELL L. GRIFFEN, Judge. Sharon Ann Stone appeals from a Workers' Compensation Commission's decision denying her benefits. She argues that the Commission erred in finding that she was not entitled to additional medical treatment and that she

was not entitled to temporary-total disability benefits. Because the Commission failed to consider surgical and post-surgical reports that appear to be material to the claim, we reverse and remand for additional findings.

Appellant worked as a manager for Dollar General Stores ("Dollar General"). She was injured on February 28, 2002, when two men robbed her after she closed the store. Appellant testified that she had taken money to the bank and returned to the store to do some ordering. After locking the store for the evening, someone grabbed appellant by her neck. Another person was on her side. The man who grabbed her choked her and then dragged her by her neck to the side of the building. The two men demanded money and hit her on the right side of her head. After appellant told the men that she had gone to the bank, the men searched her and took $103 that she had been reimbursed from Dollar General. Appellant went next door to T.J.'s Quick Stop, where her daughters worked, and stayed there until an ambulance arrived. She later went to Baptist Memorial Hospital in Blytheville, where she was treated and released.

Appellant went to work the next day. She talked to Becky Moore, risk manager for Dollar General. Moore offered psychological counseling, part of standard procedure for employees involved in a robbery. Appellant declined. Regarding her work that day, Stone testified:

> I felt so shaken I couldn't write, I couldn't be out on the floor to speak to anyone, I had to stay in the back. I felt stressed and the top of my, in the top I just started with stress, I felt funny and didn't know what was going on and four days later I went to the doctor and told the doctor I don't know what's going on.

Appellant complained of pain in her neck and arms and testified that she could not pick up or open boxes. In a March 3, 2003 letter, Dr. Trent Lamb, her primary care physician, opined that appellant's injuries fit her explanation of the robbery and that a CT scan and an MRI confirmed that opinion. Appellant testified that she had no problems with her neck before the robbery. Appellant stated that she could not walk very far and that it bothered her to drive a car or turn her head very far.

Appellant testified that the robbery occurred somewhere around 9:00 or 10:00 p.m. She drove to the hospital after midnight, where she was diagnosed with a neck strain, a facial

contusion, and a head injury. She saw nurse practitioner Angela McKenness on March 4, 2002, and again on April 8, 2002. At this time, Dr. Lamb ordered a CT scan of appellant's cervical spine as well as EMG/NCV studies. Dr. Lamb reviewed the CT scan and diagnosed small disc herniations at Stone's C5-6 and C6-7. An MRI confirmed the diagnosis. An EMG and nerve conduction studies yielded normal results. Dr. Lamb referred appellant to Dr. James Metcalf, who examined her once on May 14, 2002. Dr. Metcalf recommended continued medication and physical therapy, but did not believe that surgery was warranted. After a course of conservative treatment, which did not improve appellant's condition, Dr. Lamb referred her to Dr. Rebecca Barrett-Tuck for a second opinion. Dr. Barrett-Tuck examined Stone on June 17, 2002, and reviewed the diagnostic studies. She diagnosed a disc rupture at appellant's C5-6 and a disc rupture eccentric to the left at C6-7. In her notes dated June 17, 2002, Dr. Barrett-Tuck noted:

> I have recommended to Mrs. Stone ACDF at C5-6 and C6-7 with plating, although I have talked to her in great detail about the fact that her symptoms really go beyond what I could ascribe to her disc ruptures alone and I do not know how much relief she will get from the neck surgery. Certainly she might get complete relief but on the other hand, she may get little relief. She seems to understand. We talked about risks and complications. She has recently been found to have a piloid goiter. This was noted on the CT scan. She has an appointment with Dr. Ganong next week for evaluation. I have asked her to call and schedule her surgery when and if she is ready to proceed once she has completed her thyroid workup.

Dr. Barrett-Tuck performed an anterior cervical discectomy and fusion of C5-6 and C6-7 on August 6, 2002. The operative report stated, "A free fragment was removed from the left side of the canal." An August 6, 2002 surgical report from the St. Bernard's Medical Center Department of Pathology listed appellant's diagnosis as "benign fibrillated fibro cartilagionous connective tissue consistent with herniated nucleus pulposus." The surgery did not achieve the desired result, with appellant's right arm remaining the same, although her left arm achieved slight improvement.

Appellant worked for and received paid medical treatment from Dollar General until about April 15, 2002, when she was fired for allegedly stealing from the store. She testified that Dollar

General was doing something for a child who was in the hospital during Christmas. Appellant noted that she could not take anything out of the store without paying for it; therefore, she put the toys on a charge and the employees agreed to pay for it. She paid for the toys and had a receipt. District Manager Mark Fagan found out about this and later accused appellant of stealing from the store.[1] After April 15, 2002, she did not contact Moore or Fagan because Fagan told her not to contact the store. She retained an attorney a week after her termination.

When questioned by the administrative law judge (ALJ), appellant testified that she was nervous for the six-week period following the robbery. The pain in her neck and upper extremities began a week after the robbery. Initially, she did not discuss the pain with her doctors because she thought it would go away. She first discussed the pain with Nurse McKenness in April 2002. Appellant also acknowledged that she sustained a prior low-back injury in late 1989 as a result of a motor vehicle accident. Dr. Barrett-Tuck treated her for her injuries.

Miles Stone, appellant's husband, testified that he and appellant had been married for thirty-two years. Before the robbery, appellant had no neck problems. After the robbery, she complained of gradual neck and arm pain, which caused her arms and hands to shake. He went with appellant to her appointment with Dr. Metcalf. He testified that Dr. Metcalf only examined her for ten to fifteen minutes. After Mr. Stone testified, counsel for Dollar General stipulated that if called to testify, appellant's daughters would corroborate the testimony that she did not complain of neck and upper extremity problems before the robbery and that her condition had not changed after the surgery.

In an October 1, 2003 opinion, the ALJ found that appellant had proven entitlement to benefits for all of her cervical problems, including cervical surgery performed by Dr. Barrett-Tuck.[2] The ALJ also found that appellant was entitled to temporary-total

---

[1] In his opinion, the ALJ remarked, "The claimant's termination appeared to be under extremely questionable circumstances."

[2] Appellant testified that she did not know about a goiter she had until it was identified in April 2002. At the time of her deposition, she was taking a thyroid replacement medication. It was the only medication she was taking at the time. The ALJ found that appellant failed to prove that Dollar General was responsible for problems related to her low-back problems, multinodular goiter and/or thyroid problems, or her carpal-tunnel syndrome. This is not an issue on appeal.

disability benefits from March 1, 2002, until the end of her healing period, which continued through at least March 27, 2003. The Commission reversed the ALJ, finding that appellant failed to prove that the surgery performed by Dr. Barrett-Tuck was reasonably necessary and that she failed to prove that she was entitled to temporary-total disability benefits after May 14, 2002. Specifically, the Commission found that appellant failed to show that her abnormalities were the result of being choked or dragged. While noting Dr. Lamb's opinion that her injuries fit appellant's explanation of the events, the Commission gave more weight to Dr. Metcalf's opinion that surgery was unnecessary. This appeal followed.

The standard of review for appeals from the Commission is well established:

> In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. *Superior Indus. v. Thomaston*, 72 Ark. App. 7, 32 S.W.3d 52 (2000). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Byars Constr. Co. v. Byars*, 72 Ark. App. 158, 34 S.W.3d 797 (2000). A decision by the Workers' Compensation Commission will not be reversed unless it is determined that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Stiger v. State Line Tire Serv.*, 72 Ark. App. 250, 35 S.W.3d 335 (2000). Where the Commission denies a claim because of the claimant's failure to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if its decision displays a substantial basis for the denial of relief. *Rice v. Georgia-Pacific Corp.*, 72 Ark. App. 148, 35 S.W.3d 328 (2000).

*Carman v. Haworth, Inc.*, 74 Ark. App. 55, 59, 45 S.W.3d 408, 411 (2001). In reviewing workers' compensation cases, this court only reviews the findings of the Commission, not those of the ALJ. *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258 (2005).

Appellant argues that the Commission erred in finding that she failed to prove that she was entitled to additional medical treatment after May 14, 2002, the date of Dr. Metcalf's examination. Workers' compensation law provides that an em-

ployer shall provide the medical services that are reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Repl. 2002). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Hargis Trans. v. Chesser*, 87 Ark. App. 301, 190 S.W.3d 309 (2004); *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002).

Appellant identifies the opinions of Drs. Lamb and Barrett-Tuck as evidence supporting her need for additional medical benefits. Appellee relies heavily on Dr. Metcalf's opinion that no surgery was needed; however, the Commission's opinion did not address Dr. Barrett-Tuck's surgical report or St. Bernard's post-surgical diagnosis. These reports may be objective evidence linking appellant's injuries to the robbery.

■ It is the province of the Commission to weigh conflicting medical evidence; however, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004); *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 48 S.W.3d 544 (2001). Because the Commission's opinion does not address the surgical report or post-surgical diagnosis, we reverse their opinion and remand this case for additional findings. See *Excelsior Hotel v. Squires*, 83 Ark. App. 26, 115 S.W.3d 823 (2003).

Reversed and remanded for additional findings.

HART, NEAL, CRABTREE, and ROAF, JJ., agree.

ROBBINS, J., concurs.