Alice HUCKABEE *v.* WAL-MART, INC.,
Claims Management Insurance

CA 08-515                                         289 S.W.3d 107

Court of Appeals of Arkansas
Opinion delivered November 5, 2008

The *Zan Davis & McNeely Law Firm, PLLC*, by: *Steven R. McNeely*, for appellant.

*Roberts Law Firm, P.A.*, by: *Susan M. Fowler* and *Stephanie Egner*, for appellees.

WENDELL L. GRIFFEN, Judge. By opinion dated March 17, 2008, the Workers' Compensation Commission denied Alice Huckabee additional medical treatment for her right ankle involving annual visits to her doctor to monitor her condition. Her appeal challenges the sufficiency of the evidence to support that decision. We hold that the Commission erred as a matter of law when it determined that appellant, who was diagnosed with a compensable and permanent ankle injury, did not seek reasonably necessary medical treatment when she sought periodic examinations to determine whether a medically foreseeable condition related to her compensable injury was advancing. Thus, we reverse and remand for an award of benefits.[1]

Appellant suffered a severe right ankle injury on March 6, 2001, when she fell from a ladder while stacking boxes. She presented to Dr. Gordon Newbern, who diagnosed her with a dislocated ankle. Dr. Newbern performed an irrigation and debridement of the dislocation and reduction of her ankle and subtalar joint that day. Two days later, he applied a short leg cast to the ankle. On April 9, 2001, Dr. Newbern reported that appellant

---

[1] The parties also contested appellant's entitlement to permanent-partial disability. Appellees paid for a twelve-percent permanent impairment rating, but appellant sought benefits for a twenty-eight-percent rating. The ALJ found that appellant was entitled to only a twelve-percent rating. She attempted to argue that she was entitled to the twenty-eight-percent rating before the Commission, but she did not file a notice of cross-appeal to the Commission. The permanent-impairment rating is not an issue in this appeal.

could put more weight on the ankle, but that she was still using a walker to move. He replaced her cast with a walking boot. On January 4, 2002, Dr. Newbern wrote that appellant still had stiffness, swelling, and soreness; however, her condition had improved to the point where she could return to work. Dr. Newbern assessed her with a twelve-percent permanent impairment rating. As for future plans, Dr. Newbern stated that appellant could possibly develop arthritic changes, and he recommended annual follow-up examinations to assess whether her condition worsened. On December 2, 2002, he released appellant to full duty with no restrictions.

Dr. Newbern wrote a letter to appellee-insurance carrier on April 16, 2003. He stated that, despite the soft tissue healing around the ankle, appellant was still experiencing pain. He reiterated the possibility of the potential for developing post-traumatic arthritis in the ankle:

> I have mentioned in most of my notes that there is a significant potential for development of post-traumatic arthritis in this dislocated ankle. The fact that she has continued to have pain and stiffness with an objective loss of range of motion is evidence that the ankle joint has not returned to normal. This ankle will never return to normal. This ankle has a definite possibility of developing post-traumatic arthritis over time due to this injury.

> As I understand, the care for injuries sustained in the workplace when there is an injury that has ongoing symptoms and objective reasons for the patient to have potential further problems with an injury, these cases are maintained open to monitor this situation and to provide for care of this injury over time.

> I do attest to the fact that with a greater than 50% degree of medical certainty that Ms. Huckabee is at a real potential for further problems with her ankle down the road and that this case does need to be monitored over time so that if a problem does arise it can be addressed.

Appellant presented to Dr. Ruth Thomas for an independent medical examination on October 8, 2003. On that day, appellant rated her pain as a ten on the one-to-ten scale. Dr. Thomas related appellant's degenerative changes, stiffness, and pain to her compensable injury. She recommended that appellant

wear a solid ankle brace to help with the pain. She opined that appellant's pain would increase as the degenerative changes became more significant and that appellant might require surgical fusion in the future.

Appellant returned to Dr. Newbern on February 16, 2004, where she continued to complain of pain. Dr. Newbern wrote that appellant received some relief from the brace. He also noted the persistence of symptoms, but he did not see any significant development of post-traumatic arthritis. He again opined that appellant could develop post-traumatic arthritis and would need an ankle fusion, but he had yet to see any evidence of the condition. He instructed appellant to follow up with him within a year "to keep her file open as an ongoing case with Worker's Compensation."

Appellant was re-examined on December 3, 2004, November 28, 2005, and December 8, 2006. She continued to complain of pain and swelling, but Dr. Newbern opined that no further intervention or therapy would likely benefit her. On each occasion, he recommended annual monitoring of the ankle to determine the status of her condition. Specifically, on December 19, 2005, he wrote to appellant's attorney:

> I think that it is very possible that she will have subsequent problems with this ankle down the road. The ankle is stiff. She did suffer some post-traumatic arthritis to the joint. She may indeed have worsening stiffness, at some point, and she may develop significant post-traumatic arthritis to the ankle joint. This could conceivably result in the need for ankle fusion or ankle replacement. The outcome of this injury in the long run simply cannot be known.

> For this reason, I have recommended that she have an annual follow-up visit for this to keep this as an "open case," which I think most reasonably serves her interests and is appropriate for this injury.

Appellant presented to Dr. William Blankenship for another independent medical exam on March 6, 2006. She reported to Dr. Blankenship that she was doing her regular job with no restrictions. Dr. Blankenship reported that her ankle had healed, and he found no objective basis for any additional medical treatment.

The administrative law judge (ALJ) found that appellant proved entitlement to additional medical benefits, holding that continued monitoring to detect the onset and possible progression

of the post-traumatic arthritis in appellant's ankle was a reasonable and necessary medical expense. The Commission reversed the ALJ and held that appellant was entitled to no additional benefits, finding that appellant was seeking additional medical treatment solely to toll the statute of limitations. It specifically observed that Dr. Newbern had not offered or recommended any additional treatment and that appellant had not developed any degenerative or arthritic changes over the previous five years.

The sole issue is whether appellant is entitled to continued monitoring of her right ankle by Dr. Newbern. In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). The issue is not whether the reviewing court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, this court must affirm the decision. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

Workers' compensation law provides that an employer shall provide the medical services that are reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Supp. 2007); *Stone v. Dollar General Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005). What constitutes reasonable and necessary treatment under this statute is a question of fact for the Commission. *Geo Specialty Chem., Inc. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Stone, supra.*

With these standards in mind, we reverse the Commission's decision and remand for an award of benefits. Drs. Newbern and Thomas found that appellant had a chronic condition that could result in the development of post-traumatic arthritis and that could require an ankle fusion. Dr. Newbern consistently recommended that appellant be periodically evaluated to allow for proper monitoring of the condition. Periodic evaluations of a medically foreseeable condition related to a compensable injury constitute reasonably necessary medical treatment. As long as appellant remains at risk, any treatment that goes toward

monitoring the condition is reasonable and necessary. *See Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004) (stating that a claimant may be entitled to ongoing medical treatment, even after the healing period has ended, if the treatment is geared toward management of the injury). Accordingly, we reverse the findings of the Commission and remand this case for an award of appropriate benefits.

BIRD and GLOVER, JJ., agree.