2009 Ark. App. 746

**Bryan FOSTER, Appellant,**

v.

**KANN ENTERPRISES and Zurich American Insurance Company, Appellees.**

**No. CA 09–299.**

Court of Appeals of Arkansas.

Nov. 11, 2009.

Moore & Giles, LLP, by: Greg Giles, Texarkana, for appellant.

Frye Law Firm, P.A., by: Cynthia E. Rogers, North Little Rock, for appellees.

LARRY D. VAUGHT, Chief Judge.

In this appeal from an order of the Arkansas Workers' Compensation Commission, appellant Bryan Foster claims that the Commission erred in its refusal to require his employer, appellee Kann Enterprises, to provide additional medical care as recommended by his treating physician. We affirm in part and reverse in part.

It is undisputed that Foster sustained a compensable injury on April 2, 2006, when he was hit by a falling pallet, which first hit his head and then slid down the left side of his body. According to the "First Report of Injury or Illness," Foster injured his head, hip, shoulder, neck and knee. On the day of the accident, Foster was admitted to the hospital where a CT scan of his head, brain, and cervical spine were performed. X-rays were taken of his cervical spine and pelvis. All were normal.

Foster was treated for a scalp laceration and headaches and for problems with his neck, left hip, left knee, and left ham-

string. Two days later, Foster was sent to the company doctor, Dr. Mark Gabbie, who treated the injuries with medication and physical therapy. Dr. Gabbie diagnosed post-traumatic headaches and radicular pain and paresthesia in the left shoulder. Foster underwent a cervical MRI on May 18, 2006. That study showed:

> There is minimal bulging across the canal anteriorly at C3–4 creating mild compression of the subarachnoid space and minimal compression of the takeoff of the left neural sheath.

After the MRI, Dr. Gabbie concluded that Foster "does have spasms in the parascapula area on the left, [and] painful range of motion. We will try PT. If not better [he] will need injections." Following this diagnosis, Foster attended physical therapy (at the direction of Dr. Gabbie) for treatment of the muscles in his neck and shoulders and for the left hamstring sprain. The physical therapist noted that Foster was having the following problems:

> Chief complaint is that a knot comes up from his shoulder blade and spine. He has headaches and reports tremors to his left hand. He also states that his left knee gives way at times. He has not had any surgery. He describes his pain as sharp primarily to his hip and knee also with pain radiating to his left shoulder and forearm.

Ultimately, physical therapy proved ineffective and difficult for Foster. The record demonstrates that he missed several therapy appointments due to pre-existing problems (including bipolar disorder and effects of sleep medication) and that he was ultimately unable to continue with an at-home therapy regime.

On October 6, 2006, Dr. Gabbie "terminated all treatment." However, the termination of treatment was not accompanied by a maximum-medical improvement finding. The record suggests that Dr. Gabbie "fired" Foster as a patient because he was not compliant with the prescribed physical-therapy regimen and was no longer an employee of the company where Dr. Gabbie served as the corporate physician. Important to our analysis is the fact that Dr. Gabbie did not attempt the injection-therapy treatment option during the pendency of his doctor-patient relationship with Foster.

Following the "firing" by Dr. Gabbie of him as a patient, Foster requested that he be given a new treating physician; a change of physician request was granted by the Workers' Compensation Commission. Dr. Thomas M. Hart, an interventional spine specialist regimen, was selected as Foster's new doctor. After examining Foster on September 28, 2007, Dr. Hart authored a detailed medical assessment that identified three areas of concern and made treatment recommendations for each.

According to Dr. Hart, Foster was experiencing continuing difficulty with his neck, shoulder, and head. With regard to the neck injury, Dr. Hart made the following recommendation:

> Basically I had a long discussion with Mr. Foster, first of all it sounds like he has sustained a hyperextension, hyper-reflexion injury, i.e., whiplash. When a pallet hits you on the head it whiplashes your neck and you can have continuing neck pain complaints. An MRI did indicate a disc bulge but as I indicated to Mr. Foster at his age I would be extremely reluctant to perform a cervical discography. If we found an abnormal disc, then the question is what do you do with it. Most good surgeons would not want to fuse it. It would be more risks than benefits and it may lead to further surgeries in the future.
>
> . . . .

My suggestion to a degree of medical certainty and probability is very simple and straight forward which has not been done but was suggested by his previous physician, "if not better will need injection[,"] i.e., Dr. Gabbie, is line him up for a properly performed per medial branch approach for a left cervical facet injections. If performed properly under fluoro and it does reduce his neck pain complaints short term and he continues to improve with the anti-inflammatories, obviously leave it alone. If he gets short term relief but no long term benefit, then the standard of care is radio frequency. This is a minimally invasive, outpatient, nonsurgical procedure. It is not a cure. There is no cure, but it may provide more long term benefit for his neck pain complaints so he can continue his activities. Obviously if the facet injections are not beneficial then we will not consider radio frequency denervation.

As to Foster's complaint of head injury, Dr. Hart noted that he was "not a neurologist," but opined that Foster may "have continuing post traumatic stress headaches from his injury to the head" and recommended a referral to Reginald Rutherford, M.D., for "a neurological evaluation and also consideration for EMG and nerve conductions to rule out any other ominous type pathology and discuss the possible tremors in the left hand and his continuing visual disturbances." Finally, with regard to Foster's complaint of shoulder pain and tenderness, Dr. Hart noted that Foster "has not had an orthopedic evaluation" and recommended a referral "to Dr. Scott Bowen for an orthopedic shoulder evaluation and get his opinion."

Kann Enterprises refused to accept responsibility for the myriad additional testing and treatment recommended by Dr. Hart. The Commission considered the matter and concluded that Foster failed to prove that the additional treatment and referrals recommended by Dr. Hart were reasonable and necessary in connection with his compensable injury. It is from this decision that Foster now appeals to our court. He urges reversal based on the claim that the Commission's decision is not supported by substantial evidence.

Although our state's workers' compensation laws require employers to provide such medical services as may be reasonably necessary in connection with a compensable injury sustained by the employee, injured employees must prove that medical services are reasonably necessary by a preponderance of the evidence. Ark. Code Ann. § 11-9-508(a) (Repl.2002). The determination of precisely what constitutes reasonably necessary treatment is a question of fact for the Commission. *Gansky v. Hi–Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996). To that end, when reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence. *Crawford v. Pace Indus.*, 55 Ark.App. 60, 929 S.W.2d 727 (1996).

Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Couch v. First State Bank of Newport*, 49 Ark. App. 102, 898 S.W.2d 57 (1995). The "substantial evidence" standard requires us to affirm a denial of benefits by the Commission, if the decision displays a substantial basis for the denial of relief. *Bussell v. Georgia–Pacific Corp.*, 48 Ark.App. 131, 891 S.W.2d 75 (1995). Often, the Commission's denial of relief is predicated on its resolution of conflicting witness testimony or medical evidence. It is well established that the credibility of witnesses and the

weight to be given to their testimony are matters exclusively in the province of the Commission. *James River Corp. v. Walters*, 53 Ark.App. 59, 918 S.W.2d 211 (1996). Likewise, the Commission has the duty of weighing medical evidence, as it does any other evidence, and the resolution of any conflicts in the medical evidence is a question of fact for the Commission. *Barnard v. B & M Constr.*, 52 Ark. App. 61, 915 S.W.2d 296 (1996). Moreover, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. Stafford v. Arkmo Lumber Co., 54 Ark. App. 286, 925 S.W.2d 170 (1996).

■ Here, all parties agree that Foster sustained compensable injuries on April 2, 2006, when he was struck on the head with a pallet. He required seven staples in his head, and diagnostic medical attention was provided to Foster by his employer at the direction of Dr. Gabbie. The testing included a CT of the head and brain, a CT of the cervical spine, x-rays of the pelvis, x-rays of the cervical spine, and an MRI of the cervical spine. All of these tests showed "normal" results. After a full diagnostic evaluation, Dr. Gabbie noted that in addition to the neck injury, Foster suffered from bipolar disorder, migraine headaches, depression, and homicidal and suicidal tendencies. All but the neck malady pre-dated the workplace injury. Based on these test diagnostic results and observations, the treatment path recommended by Dr. Gabbie included medication and physical therapy for the neck injury. Dr. Gabbie also noted that after attempting "[physical therapy i]f not better [Foster] will need injections."

As previously mentioned, Foster's physical therapy was not successful, due in part to his inability to comply with the rigors of the regime. As such, because the treatment was unsuccessful and no additional treatment options were offered, Foster changed physicians. Of paramount importance in this case is the fact that neither Dr. Gabbie nor the treating physical therapist indicated that Foster's injuries had resolved or that he had shown medical improvement at the time he was "fired" as a patient.

While the Commission was free to disregard Dr. Hart's recommendations that are in conflict with the opinions and recommendations of Dr. Gabbie (specifically the additional neurological and orthopedic diagnostic testing and treatment), we note that both physicians who offered an opinion about Foster's neck injury concluded that injection therapy was a reasonable treatment alternative. And, under Arkansas law, treatments to reduce or alleviate symptoms resulting from the compensable injury; to maintain the level of healing achieved; or to prevent further deterioration of the damage produced by the compensable injury are considered reasonable medical services. Ark.Code Ann. § 11–9–705(a)(3) (Repl.2002). Further, more aggressive treatments that may alleviate an individual claimant's pain can be reasonably necessary. *White Consolidated Indus. v. Galloway*, 74 Ark.App. 13, 45 S.W.3d 396 (2001).

Therefore, we conclude that the fact that Foster did not fare well in his pursuit of physical therapy is not a substantial basis for the denial of his claim for additional treatment—specifically, injection therapy—for his neck. Both Dr. Gabbie and the physical therapist admitted that Foster was not improving with the physical therapy, and neither of Foster's treating physicians have opined that he has reached maximum medical improvement in relation to his compensable neck injury. Furthermore, Dr. Gabbie and Dr. Hart each independently recommended injection therapy

as a viable treatment option. Thus, the only medical testimony—provided by both doctors—supports a conclusion that Foster is entitled to the prescribed injections. Therefore, we reverse and remand the Commission's denial of additional injection treatment for Foster's neck injury. The Commission's opinion is affirmed in all other respects.

Affirmed in part; reversed in part.

GLADWIN and MARSHALL, JJ., agree.