2010 Ark. App. 630

**ATLIS IN–HOME CARE, INC.,
and AIG Claim Services,
Inc., Appellants**

v.

**Tonya HACKNEY, Appellee.**

**No. CA 10–342.**

Court of Appeals of Arkansas.

Sept. 22, 2010.

Melissa Wood, Worley, Wood & Parrish, P.A., Little Rock, for appellant.

Adrienne Kincaid Murphy, Martin & Kieklak Law Firm, Fayetteville, for appellee.

WAYMOND M. BROWN, Judge.

This is a claim for additional medical treatment and temporary-total-disability benefits (TTD). Tonya Hackney suffered an injury to her lumbar spine while working for Atlis In–Home Care, Inc. The parties previously litigated her entitlement to additional medical treatment and TTD, and an administrative law judge (ALJ) awarded her treatment in the form of pain management and TTD for two months, ending July 18, 2008.

Hackney went before the Workers' Compensation Commission a second time, seeking treatment from her current physician and additional TTD. The ALJ awarded benefits, and the Commission affirmed and adopted the ALJ's opinion. Atlis and its carrier, AIG Claim Services, Inc. (collectively referred to as "Atlis") argue that the ALJ's opinion is not supported by substantial evidence. For the additional medical treatment, Atlis relies on the opinion of another physician, who performed an independent medical examination and concluded that further treatment would not be helpful. For the award of TTD, Atlis relies on the independent medical examination, the fact that Hackney is now going to school to further her education, and the ALJ's previous finding that she was only entitled to TTD through July 18, 2008. The treating physician's medical opinions are substantial evidence to support Hackney's entitlement to additional medical treatment and TTD. Therefore, we affirm.

*Background*

Hackney worked as a certified nursing aide for Atlis. She suffered a lower back injury on August 30, 2007, while attempting to transfer a heavy patient. She immediately sought treatment for her back. She stopped working for Atlis on September 4, 2007, to take a job for North Arkansas Regional Medical Center, but she was terminated less than two months later due to excessive absenteeism. Hackney explained that she could not take the pain anymore and had to seek treatment. She also worked as a receptionist at her sister's hair salon for a few days a week from January to April 2008.

Hackney was eventually referred to Dr. Cyril Raben, who has been her primary treating physician since the injury. She first presented to him on November 2, 2007, at which time he prescribed medication and physical therapy. He ordered an MRI, which revealed subtle disc space

desiccation at the L4–L5 interval. A subsequent CT scan showed an annular tear at L4–L5. Dr. Raben recommended a neuroforaminal block, which was performed on March 24, 2008. Hackney reported two days of relief, but the pain returned after she began to get active. Dr. Raben opined that her pain was coming from a nerve root irritation, and he recommended a microdiskectomy. He performed the procedure on April 18, 2008. Hackney reported some relief after the surgery, but she still complained of pain in her hip and back. Dr. Raben then referred her to a pain management specialist. On May 13, 2008, Dr. Raben wrote in response to questions from Hackney's attorney:

> Her initial workup was for an MRI scan that showed some questionable desiccation on one of the discs. Further workup showed, indeed, that she had a new onset injury directly related to her on-the-job injury. This included the CT diskography. Within a reasonable degree of medical certainty, the acute and proximate cause, need for medical treatment, and probable need for further treatment, at some point distant from now, is a direct result of the on-the-job injury. As I'm sure you're well aware of your client's progress since she has had an arthroscopically assisted microdiskectomy with interdiskal electrothermal thermal therapy and is doing well postoperatively from that. The longevity of this procedure is suspect however and I'm reticent to believe that she will not require an arthroplasty or arthrodesis at some point in the future. This, again is within a reasonable degree of medical certainty.

> You questioned whether or not this single episode of lifting the large patient, sustaining a lifting twisting injury, and then being able to work for some time later is concordant with the patient's history. The progression of disc de-rangement and some annular herniation is just as this patient listed, that is, there will be an injury at some point in time and it will progressively decrease the patient's [sic] of function to the point where they seek medical attention. This may be weeks to months later and, in her case, was from August until November for my case. This is very representative of this particular type of injury and indeed the fact that she had minimal changes on MRI scan that then showed an annular herniation with disc derangement by diskography validate her and, in fact, the onset of that injury being the single lifting episode described. This of course is predicated by history and as stated this is the only historical event that I have that could have caused these radiographic findings. She had no other supervisory reported episode of injury besides that listed.

The parties had a hearing before the ALJ in September 2008. Later that month, the ALJ awarded additional medical treatment and TTD from April 18 through July 18, 2008.

Meanwhile, Hackney continued to follow-up with Dr. Raben. On January 5, 2009, Dr. Raben wrote that Hackney was on a tremendous amount of medication, and he believed that she needed further evaluation and possibly a fusion. A subsequent MRI showed desiccation of the L4–L5 space with what appeared to be neuroforaminal and folding of the ligamentum flavum secondary to probable disk space height collapse. According to the radiologist, there had been further collapse of the disk and more degenerative disease at L4–L5 compared to the prior study. Dr. Rabin recommended that she undergo an arthrodesis or an arthroplasty. Her pain management doctor, D. Wayne Brooks, wrote in February 2009 regarding an anticipated return to work:

At this time the patient is going to college. I think she can continue with those type of activities, meaning she will need to sit for 1–2 hours during lecture times, and do activities which require sitting and studying, etc. With any activities she must be allowed to change positions frequently, she will require rest breaks on at least a 1–2 hour basis. I think it is very important that if she is going to have surgery to have it as quickly as possible so that she can get on with her school activities. She is studying to be a social worker. I think that is a job she could do with her condition. The sooner she gets on with her studies the sooner she will be able to return to work.

Hackney submitted to an independent medical evaluation by Dr. Michael Calhoun in April 2009. Dr. Calhoun opined that Hackney had only suffered a lumbar strain. He wrote that the findings on the most recent MRI were related to postoperative changes and a preexisting condition, not an acute work injury. He did not believe that Hackney was a surgical candidate and that she had reached maximum medical improvement. Though he did not believe Hackney could ever return to her regular work duties, he thought that she could work with a lifting, pushing, and pulling restriction of ten pounds and an allowance to sit, stand, or walk freely as needed. He also thought that determining a permanent-partial disability rating would be difficult. But because the MRI did not reveal a true disc rupture in his opinion, he thought that she suffered no permanent-partial disability. After receiving Dr. Calhoun's evaluation, Atlis stopped paying TTD benefits.

Dr. Raben took Hackney off work on June 29, 2009. In July 2009, Dr. Raben responded to questions from Hackney's attorney. He opined that a CT discography would allow him to identify Hackney's pain generation and to offer her a solution to the pain. He did not think that she had reached maximum medical improvement, and he did not think that she could be employed at that time.

The parties appeared before the ALJ again on October 14, 2009, to litigate Hackney's entitlement to treatment from Dr. Raben and additional TTD. Though it ceased payments for a brief period, Atlis had provided pain management and medication. At the time of the hearing, Hackney was a full-time student, attending class twelve to fourteen hours a week. She stated that she had to take breaks while in class in order to shift positions and stretch. She is unable to take classes that are longer than one hour and twenty minutes, and she did not believe that her body could handle her taking more class hours than she is taking now. Hackney also testified that she was working for her sister's salon at the time of the last hearing and that she worked there off and on until December 2008. She returned to the salon in March 2009 and worked about one day a week until August 2009. When asked by the ALJ, she responded that she has had to change careers because of her injury and that she has not looked for work because she is a full-time[6] student. As for the pain, Hackney felt the same as she did when she initially suffered the injury in October 2007.

The ALJ found that Hackney was entitled to receive treatment from Dr. Raben, relying on Hackney's testimony, the previous finding that his treatment was reasonably necessary in connection with her back injury, and Dr. Raben's July 2009 medical opinion. She reserved the question of Hackney's entitlement to surgery. She gave Dr. Calhoun's medical opinion little weight given the other findings in the case. The ALJ also found that Hackney was

entitled to TTD benefits from June 29, 2009, to a date yet to be determined. She rejected Atlis's argument that the claim was barred by res judicata and found that, despite going to school and occasionally working at the salon, Hackney had reentered her healing period no later than January 5, 2009. Again, she attached minimal weight to Dr. Calhoun's independent medical evaluation.

Atlis appealed the ALJ's decision to the Commission, but the Commission affirmed and adopted the ALJ's opinion. It then filed an appeal to this court.

### Standard of Review

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence.[1] Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.[2] The issue is not whether the reviewing court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, we must affirm the decision.[3]

The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission.[4] The interpretation of medical opinion is also for the Commission, and its interpretation has the weight and force of a jury verdict.[5] The Commission is also entitled to review the basis for medical opinion in deciding the weight and credibility of the opinion and medical evidence.[6] But the Commission may not arbitrarily disregard medical evidence or the testimony of any witness.[7]

### Additional Medical Treatment

First, Atlis challenges Hackney's entitlement to additional treatment from Dr. Raben. It relies on Hackney's admission that the first surgery did not help her back, Dr. Raben's opinion that the benefits of the previous surgery would not last, and the fact a doctor has already performed a discogram. It also notes Dr. Calhoun's recommendation that surgery would not help Hackney's condition.

Workers' compensation law requires an employer to provide the medical services that are reasonably necessary in connection with the injury received by the employee.[8] The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonably necessary,[9] and what constitutes reasonably necessary treatment is a question of fact for the Commission.[10]

1. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004).

2. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999).

3. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

4. *Stone v. Dollar Gen. Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005).

5. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998).

6. *Maverick Transp. v. Buzzard*, 69 Ark. App. 128, 10 S.W.3d 467 (2000).

7. *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 48 S.W.3d 544 (2001).

8. Ark.Code Ann. § 11–9–508(a) (Supp.2009); *Stone, supra.*

9. *Stone, supra.*

10. *Geo Specialty Chem., Inc. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000).

In arguing against Hackney's entitlement to treatment from Dr. Raben, Atlis heavily focuses on Dr. Raben's previous recommendation for a second surgery. But the ALJ noted that Dr. Raben went back on that recommendation, instead opting for a CT discogram. The ALJ has reserved that issue, and the question of whether surgery is reasonably necessary is not before this court.

■■ The need for diagnostic testing is properly before this court. The medical evidence shows objective findings of an injury to Hackney's lumbar spine, which still causes substantial pain. True, Hackney submitted to a CT scan in March 2008, which revealed a tear at L4–L5. Since that time, she has had surgery, which admittedly offered at best temporary relief. But the previous diagnostic testing occurred before surgery, and Hackney is still experiencing pain. And Dr. Raben is recommending further testing. This testing could show that her pain is a result of the surgery or that it is a result of changes since the surgery. Treatments to reduce or alleviate symptoms resulting from the compensable injury, to maintain the level of healing achieved, or to prevent further deterioration of the damage produced by the compensable injury are considered reasonable medical services.[11]

Substantial evidence supports the finding that Hackney's treatment from Dr. Raben is reasonably necessary. We affirm on this point.

*Temporary–Total–Disability Benefits*

Next, Atlis argues that Hackney is not entitled to additional TTD benefits. It contends that the award was improper in light of her work as a receptionist and her status as a full-time student. It also asserts that the award is barred by res judicata.

■ When an injured employee is totally incapacitated from earning wages and remains within his healing period, he is entitled to temporary-total disability.[12] The healing period continues until the employee is as far restored as the permanent character of his injury will permit, and it ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition.[13] The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence.[14]

■ Res judicata applies if the merits of an issue have already been subject to a full and fair hearing.[15] But res judicata does not bar Hackney's claim here. In the previous proceeding before the ALJ, the parties litigated Hackney's entitlement to TTD through August 1, 2008, and the Commission found that she was entitled to TTD only up to July 18. Hackney is seeking benefits for a different period of time, from June 29, 2009, to a date yet to be determined. It is possible for there to be a second, distinct healing period after the original one has ended,[16]

11. *Foster v. Kann Enters.*, 2009 Ark. App. 746, 350 S.W.3d 796.

12. *Searcy Indus. Laundry, Inc. v. Ferren*, 92 Ark. App. 65, 211 S.W.3d 11 (2005).

13. *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996).

14. *Id.*

15. *O'Hara v. J. Christy Constr. Co.*, 94 Ark. App. 143, 227 S.W.3d 443 (2006).

16. *Thurman v. Clarke Indus., Inc.*, 45 Ark. App. 87, 872 S.W.2d 418 (1994).

and to the extent that Hackney has reentered her healing period and become incapable of earning wages, she is eligible for additional TTD benefits.

 Substantial evidence supports the ALJ's finding that Hackney was entitled to TTD benefits. Dr. Raben took Hackney off work in January 2009, long before Atlis ceased TTD payments. Dr. Raben's actions are supported by the objective evidence of an injury to the lumbar spine, and his opinion is corroborated by Dr. Brooks, Hackney's pain management specialist. Atlis focuses on Hackney's reception work, but the Commission recognized that a claimant remains within her healing period as long as she is unable to perform remunerative labor with reasonable consistency and without pain and discomfort.[17] And while she has not searched for employment due to her status as fulltime student, Dr. Raben's opinion that she cannot work at this time is substantial evidence that she is within her healing period and entitled to TTD benefits.

Substantial evidence supports the Commission's finding that Hackney is entitled to TTD benefits from June 29, 2009, to a date to be determined. We affirm on this point as well.

Affirmed.

ROBBINS and KINARD, JJ., agree.

---

17. *See Farmers Co-op. v. Biles,* 77 Ark. App. 1, 69 S.W.3d 899 (2002).