2010 Ark. App. 826

**AEGON INSURANCE USA and St. Paul Fire & Marine Insurance Company, Appellants**

v.

**DeAnn E. DURHAM–GILPATRICK, Appellee.**

No. CA 10–647.

Court of Appeals of Arkansas.

Dec. 8, 2010.

Rehearing Denied Jan. 19, 2011.

Neal Laurence Hart, Hart Law Firm, L.L.P., Little Rock, for appellant.

Gail Owen Matthews, Doralee Chandler, Little Rock, for appellee.

WAYMOND M. BROWN, Judge.

The parties have been litigating DeAnn Durham–Gilpatrick's entitlement to benefits since she suffered a compensable injury in February 1998. This time, they are contesting her entitlement to psychiatric treatment, which Durham–Gilpatrick claimed was causally related to her injury. The administrative law judge (ALJ) found that psychiatric treatment was reasonably necessary and causally related to her compensable injury. The Commission affirmed and adopted the ALJ's opinion. Aegon Insurance USA and its carrier St. Paul Fire and Marine Insurance Company (collectively referred to as "Aegon") argue that the Commission's opinion is not supported by substantial evidence. Aegon claims that the treatment was not reasonably necessary or causally related to her compensable injury. It further contends that Durham–Gilpatrick's claim is one for a compensable mental injury and that she failed to prove entitlement to benefits under the workers' compensation code. Substantial evidence supports the Commission's finding that Durham–Gilpatrick's need for psychiatric treatment is reasonably necessary and causally related to her compensable injury. Therefore, we affirm.

### Background

Durham–Gilpatrick suffered a compensable injury in February 1998 when she bent down to pick up a piece of paper and felt pain in her back. The parties have been before the Commission on multiple occasions. The first time was to determine whether intradiscal electrothermal therapy (IDET) was reasonably necessary treatment for her back. In September 2000, the Commission found that Aegon was responsible for paying for the IDET.[1] Unfortunately, the IDET offered no relief. They appeared again before the Commission when Aegon challenged Durham–Gilpatrick's entitlement to medication. Aegon controverted payments after learning that she had been involved in a car accident. The Commission awarded benefits, and we affirmed.[2]

This appeal concerns whether Durham–Gilpatrick is entitled to psychiatric treatment and medication from Dr. Thomas Stinnett. The evidence in the record includes her testimony, medical records indicating prescriptions for various medications, and the following letter from Dr. Stinnett addressed to Durham–Gilpatrick's attorney:

This letter will serve to verify that the individual referenced above is currently a patient in my care. I have followed her for a period of approximately nine years.

During the time that I have worked with Ms. Durham Gilpatrick the issue of her chronic pain has been paramount. It has certainly been a factor that has exacerbated her depression, and has frequently contributed to her feelings of helplessness and hopelessness.

The psychiatric literature is full of references regarding the impact of chronic pain on mood state, and hence most pain management programs include mental health services.

There were no other mental health records available. Testimony before the ALJ suggests that the records were "lost in the shuffle" when Dr. Stinnett moved from one office to another. Aegon's former attorney wanted to schedule an evidentiary de-

1. *See Durham v. Aegon Ins. USA*, Ark. Workers' Comp. Comm'n, Sept. 27, 2000 (E911422).

2. *See Aegon Ins. USA v. Durham–Gilpatrick*, 2009 Ark. App. 316, 2009 WL 1086045 (unpublished).

position, but due to reasons personal to former counsel, that deposition was not taken. New counsel, however, declined to take the deposition.

Durham–Gilpatrick testified about her mental-health issues. Before her workplace accident, she was receiving prescriptions for Prozac, though she did not take the pills on a regular basis. Records show that she received Prozac as far back as 1994 or 1995, and she last filled her Prozac prescription in March 1998 (after the accident). She had never needed a psychiatrist before the accident, and she never needed anything more than Prozac.

She started presenting to Dr. Stinnett in early 2000. She had monthly sessions to start, but they have gradually reduced to sessions once every three months. In addition, Dr. Stinnett has prescribed various medications (Fluoxetine, Butrin SR, Lorazepam, and Musline). She testified that when she first went to him, she was having difficulty with pain and was worried about losing her job. She eventually started having suicidal thoughts and feelings of hopelessness and haplessness. Durham–Gilpatrick stated that she did not have these feelings before her injury, and she attributed her current feelings to no longer having a job, friends, a church, or a life. Today, she still is in a lot of pain and on heavy medications. On some days, she is unable to get out of bed.

Durham–Gilpatrick had a number of personal issues before her injury. In 1992, she had to take care of her first husband, who eventually died of cancer. At some point before her first husband's death, her sister was arrested and convicted of murder. In 1996 and 1997, she was in a physically abusive second marriage, where on at least two occasions, her husband beat her to the point of injury. This husband was also emotionally abusive and demeaning to her son. She divorced her second husband in May 1997. After her injury, Durham–Gilpatrick was responsible for taking care of her mother, who suffered from dementia. Her mother lived with her for nine years before passing away in 2001. Durham–Gilpatrick acknowledged that taking care of her mother caused additional stress, but she did not see it as a burden. Despite these issues, Durham–Gilpatrick stated that she was able to function before her injury because she had a job and the support of her friends, family, and church.

The ALJ ruled that Durham–Gilpatrick had established entitlement to psychiatric treatment provided by Dr. Stinnett. He found that the treatment was reasonably necessary and causally related to her February 1998 injury. Thus, he found that Aegon was liable under Arkansas Code Annotated section 11–9–508 (Supp.2009). The ALJ acknowledged Durham–Gilpatrick's history of significant mental difficulties before the accident, but he found that she was able to function despite these problems. He also found that most of the stressors were eliminated prior to her compensable injury. The ALJ stated that the major cause of Durham–Gilpatrick's current health was the compensable injury and that this finding was supported by Dr. Stinnett's letter.

The ALJ also found that it was unnecessary to prove that she suffered a mental injury, as defined by Arkansas Code Annotated section 11–9–113 (Repl.2002), but he stated that Durham–Gilpatrick also proved that her diagnosis and treatment met the criteria established in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM). He wrote that Dr. Stinnett had diagnosed Durham–Gilpatrick with depression and that, while Dr. Stinnett did not reference the DSM, the appropriate diagnostic criteria under the DSM, Third Edi-

tion Revised, would be somatoform pain disorder.

Aegon appealed to the Commission, but the Commission affirmed and adopted the ALJ's opinion. Aegon then appealed to this court.

## Analysis

■ Aegon argues that the Commission erred in requiring it to pay for Durham–Gilpatrick's psychiatric care. It argues that such care is not reasonably necessary or causally related to her compensable injury, and it relates her need for psychiatric care to her life before her injury. Aegon contends that Durham–Gilpatrick was actually seeking benefits for a compensable mental injury and that she failed to prove entitlement to those benefits. It asserts that there are no records to support the diagnosis and insufficient evidence to allow the Commission to find that |₆her symptoms correlated to criteria in the DSM.

■ In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence.[3] Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.[4] The issue is not whether the reviewing court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, we must affirm the decision.[5]

■ The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission.[6] The interpretation of medical opinion is also for the Commission, and its interpretation has the weight and force of a jury verdict.[7] The Commission is also entitled to review the basis for medical opinion in deciding the weight and credibility of the opinion and medical evidence.[8] But the Commission may not arbitrarily disregard medical evidence or the testimony of any witness.[9]

■ |₇Section 11–9–508 requires an employer to provide the medical services that are reasonably necessary in connection with the injury received by the employee.[10] Treatments to reduce or alleviate symptoms resulting from the compensable injury, to maintain the level of healing achieved, or to prevent further deterioration of the damage produced by the compensable injury are considered reasonable medical services.[11] Liability for additional medical treatment may extend beyond the healing period as long as that treatment is geared toward management of a com-

3. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004).

4. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999).

5. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

6. *Stone v. Dollar General Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005).

7. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998).

8. *Maverick Transp. v. Buzzard*, 69 Ark. App. 128, 10 S.W.3d 467 (2000).

9. *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 48 S.W.3d 544 (2001).

10. *See also Stone, supra.*

11. *Foster v. Kann Enterprises*, 2009 Ark. App. 746, 350 S.W.3d 796.

pensable injury.[12] The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonably necessary,[13] and what constitutes reasonably necessary treatment is a question of fact for the Commission.[14]

We have applied section 11–9–508 to affirm an award of benefits for psychiatric treatment. In *Dillard's, Inc. v. Johnson*,[15] the claimant sought additional medical treatment in the form of psychiatric treatment. She argued that she was entitled to such treatment under section 11–9–508, not section 11–9–113. The Commission awarded benefits, and we affirmed:

> Appellants argue that "the evidence establishes only that Ms. Johnson has a psychological impairment that existed prior to, and independent of, her injury at Dillard's. Ms. Johnson has failed to submit any medical evidence to prove that psychological treatment was reasonably necessary *in connection with* her work-related injury." Johnson responds by noting that she had never denied having mental difficulties (anxiety and depression) in the past, but that prior to the injury she had been able to function in society. She argues that the compensable injury aggravated her mental problems and caused them to worsen significantly, interfering with her ability to maintain employment.
>
> It is essentially undisputed that Johnson suffers from significant pain. Dr. Souheaver opined that pain makes depression worse and depression makes pain worse, creating "a merry-go-round of stress-related medical problems."

Moreover, as noted in Johnson's brief, Dr. Diner also reported that Johnson's psychiatric impairment was raised from a class-two level to a class-three level as a result of her compensable injury. Although appellants note that Johnson had taken a medical leave in 1995 for "multiple medical problems" and that she had suffered severe depression following a layoff from Leisure Arts in 1999, neither point supports a position that she was not able to function in society during those periods to the extent that would cause her to quit her job. As noted by Johnson, depression following a layoff is not the same as having to quit a job because of depression. In short, Dr. Diner's assessment of the effects of appellant's work-related injury on her mental health supports the Commission's finding and reasonable minds could reach the result found by the Commission.[16]

Thus, Durham–Gilpatrick could show that she was entitled to psychiatric treatment without meeting the requirements of section 11–9–113 as long as such treatment was reasonably necessary and causally related to her compensable injury. Further, as evidenced by our decision in *Johnson,* it is possible for a claimant to make such a showing even if he or she has a past history of mental-health issues.

*Johnson* guides our decision here. Admittedly, the claimant in *Johnson* presented more evidence than Durham–Gilpatrick has here. But her testimony combined with Dr. Stinnett's letter is still substantial evidence of her need for psychiatric treat-

---

12. *Patchell v. Wal–Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004).

13. *Stone, supra.*

14. *Geo Specialty Chem., Inc. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000).

15. 2010 Ark. App. 138, 374 S.W.3d 92.

16. *Id.* at 16–17, 374 S.W.3d at 92.

ment as it relates to her compensable injury. Durham–Gilpatrick had a history of mental-health issues, and the record supports a finding that her compensable injury exacerbated those issues. She went from being able to function with medication to being almost unable to function and requiring psychiatric care. To the extent that the compensable injury aggravated her preexisting condition, Aegon is liable.[17] And Dr. Stinnett wrote that he was working with Durham–Gilpatrick on the issue of her pain, that her pain factored into her feelings of depression, and that her pain contributed to feelings of helplessness and hopelessness. He also stated that pain-management programs include mental-health services. We hold that this evidence is sufficient to establish Durham–Gilpatrick's need for psychiatric services related to her compensable injury.

Substantial evidence supports the Commission's finding that Durham–Gilpatrick's psychiatric treatment was reasonably necessary and causally related to her compensable injury. We need not consider and render no opinion as to whether Durham–Gilpatrick showed that she suffered a compensable mental injury under section 11–9–113.

Affirmed.

HART and BAKER, JJ., agree.

---

17. *See Parker v. Atlantic Research Corp.,* 87 Ark. App. 145, 189 S.W.3d 449 (2004) (stating that an aggravation of a preexisting noncompensable condition by a compensable injury is compensable).